MICHAEL J. McCUE (Nevada Bar No. 6055)
JENNIFER K. CRAFT (Nevada Bar No. 8038)
LEWIS AND ROCA LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada  89169
(702) 949-8200 tel
(702) 949-8398 fax

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MINE O'MINE INC., a Nevada corporation, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| MICHAEL D. CALMESE, an individual; TRUE FAN LOGO, INC., a business of unknown origin; and DAN MORTENSEN, an individual, | **JURY DEMAND** |
| Defendants. | |

For its complaint, Plaintiff MINE O'MINE, INC. ("MOM" or "Plaintiff") alleges as follows:

## NATURE OF THE CASE

This is an action for trademark infringement, unfair competition, trademark dilution, and cybersquatting under federal statutes, with pendent state and/or common law claims for violation of the right of publicity and trademark infringement.  MOM seeks damages, attorneys' fees, costs, and temporary, preliminary and permanent injunctive relief.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court has supplemental jurisdiction over MOM's state and common law claims pursuant to 28 U.S.C. § 1367(a).

2.      This Court has personal jurisdiction over Defendants based upon the following:

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89169

1    (a) the Defendants operate interactive commercial websites on the Internet that are accessible to

2    residents of the State of Nevada; and (b) the Defendants have committed tortious acts that they

3    knew or should have known would cause injury to MOM in the State of Nevada, that caused

4    MOM to suffer injury in the State of Nevada, and MOM's claims arise out of Defendants'

5    contacts with the State of Nevada.

6         3.     Venue is proper in the United States District Court for the District of Nevada

7    under 28 U.S.C. §§ 1391(b) and 1391(c).  Venue lies in the unofficial Southern division of this

8    Court.

9    **PARTIES**

10         4.     MOM is a Nevada corporation with its principal place of business in Woodland

11    Hills, California.

12         5.     Defendant Michael D. Calmese ("Calmese") is an individual who resides in

13    Phoenix, Arizona.

14         6.     Upon information and belief, Defendant True Fan Logo, Inc. ("True Fan Logo")

15    is a fictitious business name used by Calmese.  Upon information and belief, True Fan Logo was

16    incorporated in the State of Arizona but has been dissolved and, therefore, is no loner a valid and

17    existing corporate entity.   If True Fan Logo is a valid and existing corporate entity, upon

18    information and belief, Calmese and True Fan Logo are alter egos of each other and, therefore,

19    are directly liable for the infringement of the other.

20         7.     Defendant Dan Mortensen ("Mortensen") is an individual who, upon information

21    and belief, resides in the State of Utah.

22         8.     Upon information and belief, each of the Defendants knew of the infringement

23    and other tortious conduct of each of the other defendants and materially contributed to the

24    infringement and other tortious conduct.

25    **COUNTS COMMON TO ALL CLAIMS**

26         9.     Shaquille O'Neal ("O'Neal") is considered one of the greatest basketball players

27    of all time.  He was the first overall pick in the 1992 National Basketball Association ("NBA")

28    draft.  He was part of the gold medal-winning U.S. Olympic team in 1996 and has won four

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89109

NBA championships, including three with the Los Angeles Lakers and one with the Miami Heat. O'Neal was named the NBA Most Valuable Player in 2000 and the Finals MVP in 2000, 2001 and 2002.  In 1996, the 50th anniversary of the NBA's founding, O'Neal was named one of the fifty (50) greatest players in league history by a panel of former players, coaches, general managers, team executives and media.

10.	O'Neal is the President, Secretary and Treasurer of MOM.

11.	Through certain written agreements, O'Neal granted to MOM the exclusive rights to use and sublicense O'Neal's name, image and likeness ("SHAQ Rights of Publicity") and to register, exploit and protect the SHAQ and SHAQ-formative marks.

12.	MOM owns numerous trademark registrations and trademark applications in the United States and abroad for the SHAQ mark, including, for example, U.S. Registration No. 2,141,174, for t-shirts and footwear with a date of first use in 1995; toys, games, playthings, and sporting goods, namely, basketballs; figures, figurines and accessories therefor; action figure toys and accessories therefor with a date of first use in 1993; and paper and paper articles, namely, trading cards, stationery, party goods, namely, pictures, and posters with a date of first use in 1994.

13.	MOM also owns pending trademark applications or registrations for SHAQ-formative marks, including: (a) SHAQTACULAR for "charitable fundraising services; organizing, arranging and conducting charitable fundraising events; charitable fundraising services, namely, organizing and arranging events and festivities for the public, in which athletes or entertainers volunteer their assistance to benefit children with social and economic disabilities" (U.S. Reg. No. 2959832); and (b) SHAQ ATTAQ for apparel (U.S. Serial No. 77/725454).    The marks referred to in this paragraph and the preceding paragraph will be collectively referred to as the "SHAQ Marks."

14.	The SHAQ Rights of Publicity and SHAQ Marks have been sublicensed for over fifteen (15)  years to companies, such as Reebok, Radio Shack, and 24 Hour Fitness, for worldwide use to advertise, market and sell a variety of goods and services, including footwear, apparel, consumer electronic and fitness-related products and services.

15.     The SHAQ Marks are commercially strong, because there are few or no third parties that own rights in the SHAQ mark for any goods or services.

16.     The SHAQ Marks are conceptually strong, because they are coined terms that do not exist in the English language.

17.     Based on their conceptual and commercial strength, the SHAQ Marks are famous and entitled to a broad scope of protection.

18.     On February 6, 2008, O'Neal was traded to the Phoenix Suns. At the time and during his tenure playing for the Phoenix Suns, the public dubbed him "The Big Cactus" and "The Big Shaqtus" in reference to the combination of O'Neal and the cacti that are prevalent in Phoenix, Arizona.

19.     On February 6, 2008, the same date on which O'Neal was traded, Mortensen registered the <shaqtus.com> domain name with GoDaddy.com, Inc., a registrar of domain names.

20.     Mortensen has no affiliation or relationship with O'Neal or MOM and neither of them gave Mortensen permission to register the domain name.

21.     On March 30, 2008, Calmese, in the name of True Logo Fan, registered the <shaqtus.net> domain name with GoDaddy.com, Inc.

22.     On March 31, 2008, Calmese registered "Shaqtus" as an Arizona trade name (File ID Number 42962) with the Arizona Secretary of State for "clothing sales/advertisement."

23.     Calmese has no affiliation or relationship with O'Neal or MOM and neither of them gave Calmese permission to register the <shaqtus.net> domain name or the "Shaqtus" trade name.

24.     Upon information and belief, Calmese has not applied for any federal or state trademark registrations for the SHAQTUS mark.

25.     On the <shaqtus.net> website, Calmese or True Logo Fan operates an online retail store under the SHAQTUS ORANGE CLOTHING COMPANY mark.  The store features an animated character in the form of a cactus with the facial features of O'Neal wearing an orange basketball jersey bearing the name PHOENIX SHAQTUS and the number 32 ("Shaqtus

1   Character").   O'Neal's Phoenix Suns jersey was orange and his number was 32.   The Shaqtus

2   Character is clearly intended to emulate the likeness of O'Neal.   True and accurate copies of

3   images depicting the SHAQTUS Character are shown below in Figures A and B. True and

4   accurate photos of  O'Neal are shown in Figures C and D:





Fig. B





Fig. D

Fig.  A                             Fig. C

14       26.       The <shaqtus.net> website also offers products for sale containing the SHAQTUS

15   name and/or the Shaqtus Character.   These products include adults' and kids' apparel, hats, bags,

16   pet clothing, mugs, pillows, clocks, mouse pads, journals and other products.   True and accurate

17   Images of some of these products are shown below in Figure E.   These products are offered for

18   sale on the <shaqtus.net> web site through links to online stores at <truelogofancollection.com>,

19   another web site owned and operated by Calmese, and at <cafepress.com>, a third-party web

20   site.







Figure E

27.     The <shaqtus.net> web site also provides access to videos advertising its SHAQTUS products, as well as a YouTube video of an ESPN Shaqtus Commercial identified below.

28.     Defendants Mortensen and Calmese registered and are using the <shaqtus.com> and <shaqtus.net> domain names, respectively, in bad with an intent to profit therefrom.

29.     Defendants' use of the SHAQTUS mark is confusingly similar to MOM's rights in the SHAQ Marks.  The SHAQTUS mark contains the SHAQ mark in its entirety.  Moreover, the dominant element of the SHAQTUS mark is the SHAQ mark.  In addition, the SHAQTUS mark falls within the family of SHAQ–formative marks, such as SHAQTACULUR and SHAQ ATTAQ.

30.     Defendants are using the SHAQTUS mark in connection with goods covered by MOM's trademark rights, as well as related goods and goods within MOM's zone of expansion.  Moreover, Defendants are using the SHAQTUS mark as a secondary source to refer to MOM or O'Neal.

31.     Defendants are selling the SHAQTUS and Shaqtus Character goods in the same channels of trade through which MOM or its licensees sell branded goods, including on web sites on the Internet.

32.     Defendants intended to trade off of the goodwill and reputation of MOM or O'Neal.

33.     Defendants' use of the SHAQTUS mark is likely to dilute the distinctiveness of the SHAQ Marks. The SHAQ Marks are highly distinctive and widely recognized.  MOM is engaged in substantially exclusive use of the SHAQ Marks.  There is a high degree of similarity between the SHAQTUS mark and the SHAQ Marks.  Upon information and belief, consumers associate the SHAQTUS mark with the SHAQ Marks.   Upon information and belief, Defendants intended to create an association between the SHAQTUS mark and the SHAQ Marks.

34.     In 2008 and 2009, ESPN aired commercials featuring O'Neal encountering a cactus bearing  O'Neal's face in the Arizona desert.  ("ESPN SHAQTUS Commercial").

35.     On December 4, 2009, Calmese sent a letter to ESPN claiming that he owns the

SHAQTUS mark and trade name and asserting that ESPN'S SHAQTUS Commercial creates a likelihood of confusion with Calmese's advertisements.  In the letter, Calmese states that "we do not want to image associated with the real live SHAQ to go away."   Calmese offered to resolve the matter if ESPN would enter into a business arrangement with Calmese.  He also proposed jointly developing an animated "SHAQTUSCLAUS" clip for Christmas.

36.     On December 8, 2009, ESPN responded to Calmese's letter indicating that ESPN received consent from MOM to use the SHAQ Rights of Publicity and SHAQ Marks and that Calmese is infringing upon Plaintiff's intellectual property rights.

37.     On December 10, 2009, Calmese responded to ESPN's letter, claiming that he, not MOM or O'Neal, owns the SHAQTUS mark.

38.     On December 14, 2009, ESPN notified MOM's counsel about Calmese's allegations regarding the SHAQTUS mark.

39.     On December 29, 2009, counsel for MOM and O'Neal sent a letter to Calmese and True Fan Logo demanding that he and his company cease and desist from all use of the SHAQTUS mark, to transfer the <shaqtus.net> and <shaqtus.com> domain names to MOM, and to cancel  Calmese's Arizona trade name registration for SHAQTUS.

40.     On January 4, 2010, Calmese responded to the letter sent by counsel for MOM and O'Neal claiming that O'Neal consented to his use of the SHAQTUS mark, when O'Neal agreed to take a picture with Calmese and autograph a t-shirt.

41.     Neither O'Neal nor MOM has granted a license to use the SHAQ Right of Publicity or to use and own the SHAQTUS mark or the <shaqtus.com> or <shaqtus.net> domain names.

42.     Defendants' tortious conduct was willful and intentional.

## COUNT I
(Trademark Infringement under
the Lanham Act, 15 U.S.C. § 1114)

43.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

44.     Defendants are using the SHAQTUS mark and domain names in commerce in

1   connection with the sale of goods.

2       45.     Defendants' use in commerce of the SHAQTUS mark and domain names

3   constitutes a reproduction, copying, counterfeiting, and colorable imitation of the SHAQ Marks

4   in a manner that is likely to cause confusion or mistake or is likely to deceive consumers.

5       46.     As a direct and proximate result of Defendants' infringement, MOM has suffered,

6   and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and

7   goodwill.

8                                 **COUNT II**
                          (Unfair Competition under
9                   the Lanham Act, 15 U.S.C. § 1125(a))

10      47.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set

11  forth herein.

12      48.     Defendants' use in commerce of the SHAQTUS mark constitutes a false

13  designation of origin and/or a false or misleading description or representation of fact, which is

14  likely to cause confusion, cause mistake, or deceive as to affiliation, connection, or association

15  with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods or commercial

16  activities by Plaintiff.

17      49.     As a direct and proximate result of such unfair competition, Plaintiff has suffered,

18  and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and

19  goodwill.

20                                **COUNT III**
                          (Trademark Dilution under the
21              Federal Anti-Dilution Act, 15 U.S.C. § 1125(c))

22      50.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set

23  forth herein.

24      51.     Plaintiff's SHAQ Marks are famous.

25      52.     Defendants' use of the SHAQTUS mark and domain names is likely to dilute the

26  distinctiveness of the SHAQ Marks.

27      53.     As a direct and proximate result of Defendants' dilution of Plaintiff's marks,

28  Plaintiff has suffered, and will suffer, irreparable injury to its business, reputation, and goodwill.

**COUNT IV**
(Cybersquatting under
the Lanham Act, 15 U.S.C. § 1125(d))

54.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

55.     Defendants have registered, trafficked in, and/or used domain names that are identical or confusingly similar to and/or dilutive of the SHAQ Marks, which were distinctive and/or famous at the time of registration of the domain names.

56.     Upon information and belief, Defendants had a bad faith intent to profit from the domain names.

57.     As a direct and proximate result of such conduct, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

**COUNT V**
(Common Law Trademark Infringement)

58.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

59.     By virtue of having used and continuing to use the SHAQ Marks, Plaintiff has acquired common law trademark rights in the SHAQ Marks.

60.     Defendants' use of SHAQTUS mark infringes Plaintiff's common law rights in its SHAQ Marks and is likely to cause confusion, mistake, or deception among consumers, who will believe that Defendants' goods originate from, or are affiliated with, or endorsed by Plaintiff, when, in fact, they are not.

61.     As the direct and proximate result of Defendants' infringement of Plaintiff's common law trademark rights under Nevada and other common law, Plaintiff has suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation, and goodwill.

**COUNT VI**
(Violation of the Right of Publicity
under N.R.S. § 597.770)

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

62.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

63.     Plaintiff owns the SHAQ Rights of Publicity.

64.     Defendants have made commercial use of the SHAQ Rights of Publicity without Plaintiff's written consent. As the direct and proximate result of Defendants' deceptive conduct, Plaintiff has suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation, and goodwill

65.     Plaintiff is entitled to injunctive relief, actual damages, and because Defendants knowingly made use of the SHAQ Rights of Publicity without written consent, Plaintiff is entitled to exemplary or punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court grant the following relief:

A.     A preliminary and permanent injunction prohibiting Defendants and their respective officers, agents, servants, employees and/or all persons acting in concert or participation with them from:

(1)     using the SHAQTUS mark, <shaqtus.com> domain name. <shaqus.net> domain name, and any other marks or domain names confusingly similar to any of the SHAQ Marks, alone or in combination with any other letters, words, letter strings, phrases or designs, in commerce or in connection with any goods or services; and

(2)     registering or trafficking in any domain names containing the SHAQ Marks or confusingly similar variations thereof, alone or in combination with any other letters, words, phrases or designs;

B.     A preliminary and permanent injunction requiring the current domain name registrar or registry to transfer the <shaqtus.com> and <shaqtus.net> domain name registrations to Plaintiff;

C.     An award of compensatory, consequential, statutory, exemplary, punitive damages to Plaintiff in an amount to be determined at trial;

/ / /

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89109

1    D.    An award of interest, costs and attorneys' fees incurred by Plaintiff in prosecuting

2  this action; and

3    E.    All other relief to which Plaintiff is entitled.

4    DATED: January 12, 2010.

5                              Respectfully submitted,

6                              LEWIS AND ROCA LLP

7

8                    By   /s/ Michael J. McCue

9                         Michael J. McCue
                          Jennifer K. Craft
10                        3993 Howard Hughes Parkway, Suite 600
                          Las Vegas, Nevada 89169
11                        (702) 949-8200 tel
                          (702) 949-8398 fax

12                        Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28