**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MINE O' MINE, INC., | |
| Plaintiffs, | Case No. 2:10-CV-00043-KJD-PAL |
| v. | **ORDER** |
| MICHAEL D. CALMESE; and TRUE FAN LOGO, INC., | |
| Defendants. | |

Presently before the Court is Plaintiff's Motion for Partial Summary Judgment (#50). Defendants filed a Response in Opposition to Summary Judgment and Cross Motion for Summary Judgment (#58). In reply, Plaintiff filed a Motion to Strike Defendants Response and Cross Motion (#59) and Defendants filed a Response in Opposition to Motion to Strike (#62).

**I. Facts and Procedural History**

Shaquille O'Neal (O'Neal) is an accomplished basketball player who began his career with the National Basketball Association ("NBA") in 1992. Early in his career O'Neal was nicknamed "Shaq." O'Neal is the President, Secretary, and Treasurer of Plaintiff Mine O' Mine, Inc. ("MOM") and he has granted MOM the exclusive right to sublicense his name, image, and likeness and to register, exploit, and protect the word "Shaq" and Shaq formative marks including, among others:

"Shaq," "Shaqtacular," "Shaq Attaq," and "Shaq's All Star Comedy Jam."  MOM's federal registration of the Shaq mark, for t-shirts, and other goods was issued in 1998 based on the first use of the mark in 1995.  MOM is unaware of any third parties that own rights in Shaq or Shaq formative marks for any goods or services.  "Shaq" is a coined term that does not exist in the English language.

On or about February 6, 2008, O'Neal was traded to the Phoenix Suns.  Around that same time sportswriters and others dubbed him "The Big Cactus" and "The Big Shaqtus."  While playing for the Phoenix Suns, O'Neal wore an orange jersey with the number 32.

On or about March, 30, 2008, "True Logo Fan, Inc." registered <Shaqtus.net> as a domain name with GoDaddy.  Girmar Anwar ("Anwar") is listed as the administrative contact for <Shaqtus.net> and Anwar's declaration (#54) states that Anwar owns and registered <Shaqtus.net>.  Defendant Michael Calmese ("Calmese") asserts that True Logo Fan, Inc. is his business' name because he has registered it as a trademark.  Calmese was also the registered agent for True Logo Fan, Inc., which was an Arizona corporation before it dissolved in 2002.

On or about March 31, 2008, Clamese registered "Shaqtus" as an Arizona trade name with the Arizona Secretary of State for "clothing/advertising."  Calmese hired Michael Herzog of Vision Animation Studios to create the image of the Shaqtus.  The Shaqtus took the form of a cactus with the facial expression of a man wearing an orange basketball jersey bearing the name "Phoenix Shaqtus" and the number 32 and bouncing a basketball ("Shaqtus Character").  The voice of the Shaqtus Character in short video clips was provided by Calmese's business partner, Damion Gosa ("Gosa").  Calmese sold clothing with the Shaqtus trade name and Shaqtus Character online at <Shaqtus.net> and/or another online retail store.  (#52).

In 2008 and 2009, ESPN aired commercials featuring O'Neal encountering a cactus bearing O'Neal's face in the Arizona desert ("ESPN Commercial").  On or about December 4, 2009, Calmese sent a letter to ESPN which states that he is the co-owner of the "Shaqtus" trademark and trade name.  Calmese's letter states that, "[Calmese's] business has been selling clothing articles and advertisements with the same "Shaqtus" trademark since 2008 at Shaqtus.NET and Shaqtus.COM."

(#50-15)(Original Emphasis).  Calmese's letter further states that Calmese "does not want the image ESPN created with the real live Shaq to go away," and he proposes either selling the "Shaqtus" trade name to ESPN or jointly creating the "Shaqtusclaus" with ESPN.  Id.  ESPN responded to Clamese's letter informing him that MOM is the owner of the federal registration for the mark Shaq and that any claim of property would stem from that registration.  (#50-16).  ESPN's letter further stated that ESPN's use of "Shaqtus" was done with the consent of O'Neal.  Calmese responded to ESPN's letter stating that he is the rightful owner of the "Shaqtus" trade name and therefore O'Neal could not have given ESPN permission to use the mark. (#50-17).  On or about December 29, 2009, counsel for MOM and O'Neal sent Calmese and True Fan Logo a letter demanding he and his company cease and desist from all use of the Shaqtus mark, to transfer <Shaqtus.net> to MOM, and to cancel his Arizona trade name registration for Shaqtus.  (#50-18).  Calmese has not canceled his "Shaqtus" trade name registration and True Fan Logo is still the registered agent for <Shaqtus.net>, but the website itself is no longer viewable.

On January 12, 2010, MOM filed the present suit against Calmese and True Fan Logo asserting six claims: (i) Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114; (ii) Unfair Competition under the Lanham Act, 15 U.S.C. § 1125(a); (iii) Trademark Dilution under the Federal Anti-Dilution Act, 15 U.S.C. § 1125(c); (iv) Cybersquating under the Lanham Act, 15 U.S.C. § 1125(d); (v) Common Law Trademark Infringement; and (vi) Violation of the Right of Publicity under, N.R.S. § 597.770. (#1).  Calmese, who is representing himself and True Fan Logo pro se, countered with three counterclaims: (1) Common Law Trademark Infringement; (2)  Unfair Competition under the Lanham Act, 15 U.S.C. § 1125(a); and (3) Defamation of Character - Libel. (#6).

In the present motion, MOM seeks summary judgment in its favor on its first, second, fifth, and sixth claims for trademark infringement, unfair competition, and violation of the right of publicity and on all of the counterclaims asserted by Calmese.  (#50).  Calmese's opposition seeks summary judgment in his favor for all of his counterclaims and for all of Plaintiff's claims. (#55).

MOM also seeks to strike Calmese's opposition. (#55).

**II.  Motion to Strike**

Plaintiff asserts that Defendants' Response in Opposition should be stricken.  (#59).  Plaintiff argues that the response is not actually an opposition, but rather a motion for summary judgment and because it is substantively a motion for summary judgment, it is untimely.  Defendants contend that the response "clearly opposes Plaintiff's Motion for Summary Judgment" and it is also a cross motion for summary judgment.  (#62).

Pro se litigants are not held to the same standard as admitted or bar licensed attorneys. Haines v. Kerner, 404 U.S. 519, 521.  Pleadings by pro se litigants, regardless of deficiencies, should only be judged by function, not form. Id.

Here, although not all of Plaintiff's summary judgment arguments are addressed by the Response in Opposition to Summary Judgment, the response is clearly in opposition.  Defendants' opposition counters many of Plaintiff's arguments with counter-arguments both directly and with its own arguments for why summary judgment should be awarded to the defense instead. (#52). Further, the response asserts that there are genuine issues of material fact that preclude summary judgment for Plaintiff.  Therefore, although the substance of the response is primarily Defendants' own motion for summary judgment, it is also functionally an opposition.   Accordingly, the Motion to Strike (#59) is denied.

**III.  Standard for Summary Judgment**

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See, Fed. R. Civ. P. 56(c); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See, Celotex, 477 U.S. at 323.

The burden then shifts to the nonmoving party to set forth specific facts demonstrating a

genuine factual issue for trial.  See, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).  "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

**III.  Material Facts**

The facts listed above in "I.  Facts and Background," are either not disputed or have been evidenced to be correct.  However, Defendants assert that there are genuine issues of material fact precluding summary judgment for Plaintiff.   Calmese argues that the facts which preclude summary judgment are: (1) this entire law suit is revenge-based and was brought solely because MOM's counsel lost a motion to Calmese in an unrelated matter; (2) Plaintiff did not sue other related parties who may also be liable in this case; (3) Anwar, not Calmese, owns <Shaqtus.net> and Calmese did not sell Shaqtus clothing on <Shaqtus.net>; (4) the Shaqtus was actually a reference to Gosa and not to O'Neal; and (5) it was ESPN that created any connection between O'Neal and the Shaqtus mark, not Calmese.

The first contention is not one of fact, but rather it is an allegation.  Calmese has presented no evidence to support this allegation nor are any of his counterclaims related to this allegation.  The Court cannot entertain Calmese's "revenge" theory until it is properly presented to the Court. Furthermore, it does not raise a genuine issue of material fact and is not a bar to summary judgment.

The second contention should have been brought as a motion to dismiss for failure to join a party under Fed.R.Civ.P. 12(b)(7).  Defenses not raised by preanswer motion or affirmatively set forth in the answer are deemed waived and therefore, failure to join a party is waived if not timely asserted.  William W. Schwarzer, et al., Federal Civil Procedure Before Trial, (2002) § 7:127, citing Northeast Drilling, Inc., v. Inner Space Services, Inc., 243 F.3d. 25, 36-37 (1.st Cir. 2001).  Further, when the absence of a party is raised on appeal it is only proper to add that party when it is necessary

5

to protect the absentee from serious prejudice. Richard D. Freer, et al., Moore's Federal Practice, (3rd ed. 2000) § 19.02[4][b][ii]. Here, Calmese never filed a 12(b)(7) motion and his current contention that additional parties should have been sued appears to be for his own benefit and not the benefit of those not involved in the present litigation. Accordingly, it is irrelevant that additional parties were not sued. Even if Clamese moved to add parties, which he did not, it is not appropriate to add those parties now.

The third contention is a factual dispute between the parties, because MOM asserts that Calmese owns and operates <Shaqtus.net> and Calmese asserts that Anwar is the true owner and operator. However, who owns, registered, or operated <Shaqtus.net> is irrelevant to this summary judgment analysis. Calmese acknowledges that he sold Shaqtus t-shirts online and the analysis is not altered by which website he used. (#52).

The fourth contention is self-serving and not a genuine issue of material fact. Shaqtus was a nickname for O'Neal when he played for the Phoenix Suns and the Shaqtus Character Calmese commissioned was a basketball playing cactus that wore the same color jersey and number as O'Neal when he played for the Phoenix Suns. Additionally, Calmese's entire Shaqtus venture began only after O'Neal began playing for the Phoenix Suns and was dubbed "Shaqtus." In light of all the similarities between O'Neal and the character, the fact that Gosa provided the voice of the Shaqtus Character is not a significant enough factual contention to conclude that the character was indeed based on Gosa and not O'Neal. J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition (4th ed. 2005) ("McCarthy") § 23:115.

Finally, the fifth contention is self-serving and not a genuine issue of material fact for the same reason as the fourth contention. Accordingly, none of the issues asserted by Calmese are genuine issues of material fact that bar summary judgment in favor of MOM.

**IV.  Summary Judgment Analysis**

Plaintiff asserts that pursuant to Fed.R.Civ.P. 56 and based on the facts listed above, it is entitled to summary judgment on its trademark infringement, unfair competition, and violation of the

right of publicity claims and all of Defendants' counterclaims.

**A. Trademark Infringement - Claim (i)**

To prevail on a claim of trademark infringement under the Lanham Act, a party "must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." Dep't of Parks & Recreation v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1124 (9th Cir. 2006); see, Maljack Productions, Inc. v. GoodTimes Home Video Corp., 81 F.3d 881 (9th Cir. 1998) ("[T]he district court properly granted summary judgment on the trademark claim" when the plaintiff failed to show that use of the mark was "likely to cause consumer confusion"). Calmese does not contest that MOM owns the U.S. trademark registrations and applications for Shaq and Shaq formative marks.[1] (#52, p. 16). Therefore, the question is whether Calmese's use of Shaqtus is likely to cause consumer confusion with Shaq and Shaq formative marks.

MOM asserts that there is a high likelihood of confusion because, among other similarities, the marks start with the same four letters which are uniquely known to refer to O'Neal and Calmese clearly intended to refer to the name given to O'Neal by sportswriters when O'Neal transferred to the Phoenix Suns, which was "Shaqtus" a combination of "Shaq" and "cactus." (#50). Calmese contends that any confusion between Shaqtus and O'Neal was created by ESPN with the ESPN Commercial. He further claims that he never intended for the Shaqtus character to be confused with the "real live Shaq," and the Shaqtus character was instead his business partner Gosa. (#52).

The Court considers eight factors to determine the likelihood of consumer confusion: "[1] strength of the mark; [2] proximity of the goods; [3] similarity of the marks; [4] evidence of actual confusion; [5] marketing channels used; [6] type of goods and the degree of care likely to be exercised by the purchaser; [7] defendant's intent in selecting the mark; and [8] likelihood of

---

[1] Although Calmese disputes whether MOM has any ownership interest over the Shaqtus trade name, that contention is not relevant to determine whether the use of Shaqtus is likely to cause consumer confusion with Shaq and Shaq formative marks.

7

expansion of the product lines." Network Automation, Inc. v. Advanced Systems Concepts, Inc., 638 F.3d 1137, 1145 (9th Cir. 2011), citing AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979). These eight factors are not exhaustive and "other variables may come into play depending on the particular facts presented." Id.; See, e.g., Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1030 (9th Cir. 2010) ("This eight-factor analysis is 'pliant,' illustrative rather than exhaustive, and best understood as simply providing helpful guideposts.").

### 1. Strength of the Mark

"The stronger a mark—meaning the more likely it is to be remembered and associated in the public mind with the mark's owner—the greater the protection it is accorded by the trademark laws." Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1058 (9th Cir. 1999). The strength of the trademark is determined based on its conceptual and commercial strength. GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1207 (9th Cir. 2000). Conceptual strength involves classification of a mark "along a spectrum of generally increasing inherent distinctiveness" as generic (afforded no protection), descriptive (entitled to no protection absent a showing of secondary meaning), suggestive (entitled to moderate protection), arbitrary (entitled to more protection), or fanciful (entitled to maximum protection). Brookfield, 174 F.3d at 1058. Fanciful marks are "wholly made-up terms" that have "no intrinsic connection to the product with which the mark is used." Brookfield, 174 F.3d at 1058 n.19. Further, "a federal trademark registration of a particular mark supports the distinctiveness of that mark." Lahoti v. VeriCheck, Inc., 586 F.3d 1190, 1199 (9th Cir. 2009). Commercial strength is based on "actual marketplace recognition." Brookfield, 174 F.3d at 1058. Absence of third party uses of a mark is indicative of the mark's commercial strength. See, e.g., CareFirst of Maryland, Inc. v. First Care, P.C., 434 F.3d 263, 269-70 (4th Cir. 2006) (holding that extensive evidence of third party use is indicative of a mark's commercial weakness).

Here, the Shaq mark is both conceptually and commercially strong. The mark is conceptually strong because it is a coined term that does not exist in the English language and therefore fanciful.

Accordingly, it is entitled to maximum protection. The mark is commercially strong because it has been used nationwide since the 1990s to refer to O'Neal and goods or services that originate with him or his company. It can hardly be disputed that any sports fan who has lived in the United States or watched the NBA in at least the past fifteen years would conclude that a reference to "Shaq" is a reference to O'Neal. Additionally, O'Neal's company, MOM, has exclusive rights to Shaq and Shaq formative marks and is unaware of any third parties who use the mark. Because Shaq and Shaq formative marks are both conceptually and commercially strong, this factor weighs in favor of finding a likelihood of confusion.

### 2. Proximity of the Goods

Proximity of goods refers to the relatedness of the goods at issue:

> "'Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods.' Brookfield, 174 F.3d at 1055. '[T]he danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists.' Sleekcraft, 599 F.2d at 350. The proximity of goods is measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function. Id." Network Automation, 638 F.3d at 1050.

Here, MOM sells t-shirts with the Shaq mark and Calmese sold t-shirts with the Shaqtus mark. The shirts are complementary because they are both shirts that reference the same NBA player. There are no different classes of t-shirt consumers, and t-shirts with the Shaq mark are identical in use and function as t-shirts with the Shaqtus mark. Therefore, because both Calmese and MOM offered t-shirts for sale under their respective marks, this factor weighs in favor of finding a likelihood of confusion.

### 3. Similarity of the Marks

"[T]he greater the similarity between the two marks at issue, the greater the likelihood of confusion." Goto.com, 202 F.3d at 1206. "One thing is very clear: 'exact similitude is not required' between the allegedly confusing marks." McCarthy, § 23:20. "Similarity of the marks is tested on three levels: sight, sound, and meaning. Each must be considered as they are encountered in the

marketplace." Sleekcraft, 599 F.2d at 351 (citations omitted).  In Sleekcraft, the marks "Sleekcraft" and "Slickcraft" were found to be similar in terms of sight, sound, and meaning by examining the actual situations in which consumers were likely to read, hear, and consider the meaning of the terms. Id. at 351–52.

Here, both Shaqtus and the Shaq mark begin with the same four letters and therefore when consumers read and hear the two terms, Shaqtus and Shaq, they see and hear words that are similar in sight and sound.  Further, since Shaq and Shaqtus have both been used to refer to O'Neal, the marks are similar in meaning.  Calmese's contention that Shaqtus referred to Gosa is clearly self-serving and does not create a genuine issue of material fact precluding summary judgment.[2]  See Villiarimo, 281 F.3d at 1061.

Additionally, the Shaqtus mark falls within the scope of MOM's family of Shaq marks. Under the family of marks doctrine, "[a] trademark owner may use a plurality of marks with a common prefix . . . to establish that it has a 'family' of marks, all of which have a common 'surname.'" McCarthy § 23:61.  The family "surname" is recognized by consumers as an identifying trademark in and of itself when it appears in a composite.  Id.  Even though a junior user's mark may not be that close to any one member of the family, it may have used the distinguishing family "surname" or characteristic so as to be likely to cause confusion.  Id.

Here, MOM owns a family of marks containing the surname Shaq, including Shaq, ShaqTACULAR, and Shaq ATTAQ.  The Shaqtus mark also contains the Shaq surname.  Therefore, Shaqtus clearly falls within the scope of MOM's family of marks.  Accordingly, this factor weighs in favor of finding a likelihood of confusion.

---

[2] Shaq is O'Neal's long-time nickname and Shaqtus was a nickname given to O'Neal when he played for the Phoenix Suns. Additionally, the Shaqtus Character commissioned by Calmese is a cactus bearing the same color jersey that O'Neal wore while playing for the Phoenix Suns and the same number O'Neal wore while playing for the Phoenix Suns and it held a basketball. These characteristics indicate that Shaqtus refers to O'Neal.

10

####    4. Evidence of Actual Confusion

Here, there are no facts for the Court to evaluate concerning actual confusion.  Therefore, there is no indication that there was or that there was not actual confusion.  Accordingly, the Court will not consider this factor.

####    5. Marketing Channels Used

"Convergent marketing channels increase the likelihood of confusion." <u>Sleekcraft</u>, 599 F.2d at 353.  However, "this factor becomes less important" when the marketing channel is as widely used as the Internet.  <u>Network Automation</u>, 638 F.3d at 1151.  Today, almost all retailers advertise online, and the shared use of such a wide-ranging marketing channel does not shed much light on the likelihood of consumer confusion.

Here, the only marketing channel MOM and Calmese shared was the Internet.  Therefore, although this factor weighs slightly in favor of finding a likelihood of confusion, the actual importance of this factor is minuscule.

####    6.  Type of Goods and the Degree of Care Likely to be Exercised by the Purchaser

"Low consumer care ... increases the likelihood of confusion." <u>Network Automation</u>, 638 F.3d at 1151, <u>citing</u>  <u>Playboy Enters., Inc. v. Netscape Commc'ns Corp.</u>, 354 F.3d 1020, 1028 (9th Cir. 2004).  When the goods at issue are inexpensive, consumers are less likely to exercise much care in making purchasing decisions.  <u>See</u>, <u>e.g.</u>, <u>Sleekcraft</u>, 599 F.2d 353-54.

Here, the goods at issue are t-shirts, which as a general rule are not expensive and therefore consumers are less likely to exercise care when deciding to purchase a t-shirt.  Although the parties dispute whether the website appeared to be affiliated with MOM's Shaq mark, that is not an important fact.  MOM's trademark claims do not concern whether consumers believed the website was run or sponsored by MOM, but rather that there was a likelihood of confusion that the goods sold

were affiliated with MOM's Shaq mark.[3]  Accordingly, because t-shirts are inexpensive and consumers exercise little care when deciding to buy a t-shirt, this factor weighs in favor of finding a likelihood of confusion.

### 7.  Intent in Selecting the Mark

"When the alleged infringer knowingly adopts a mark similar to another's [mark]," courts presume an intent to deceive the public. Sleekcraft, 599 F.2d at 354.  It is easy to infer wrongful intent when the defendant "knew of plaintiff's mark, had freedom to choose any mark and 'just happened' to choose a mark confusingly similar to plaintiff's mark." McCarthy § 23:115.  "In turn, intent to deceive is strong evidence of a likelihood of confusion." Sleekcraft, 599 F.2d at 354.

Here, Calmese intended to cause confusion with the Shaqtus mark.  He knew about the Shaq mark and yet chose the Shaqtus mark anyway after O'Neal was traded to the Phoenix Suns in February 2008 and after O'Neal was dubbed "Shaqtus."  Additionally, the Shaqtus character was clearly intended to be a cactus caricature of O'Neal.  Calmese's contention that Shaqtus is actually Gosa is not credible since it featured a basketball playing cactus, named Shaqtus, wearing an orange shirt and the number 32, after O'Neal was traded to the Phoenix Suns.  There is no question Calmese intended Shaqtus to be confusingly similar to Shaq and the Shaq family of marks.  Accordingly, this factor weighs strongly in favor of finding a likelihood of confusion.

### 8.  Likelihood of Expansion of the Product Lines

As a general rule, "[w]hen goods are closely related, any expansion is likely to result in direct competition." Sleekcraft, 599 F.2d at 354.  However, here, although both parties are selling t-shirts, expansion by Calmese is unlikely.  O'Neal no longer plays for the Phoenix Suns and thus a Shaqtus t-shirt lacks marketability.  Further, Calmeses has asserted that he is not presently selling Shaqtus gear.  The likelihood of expansion therefore is low and this factor does not weigh in favor of a

---

[3]Therefore, this is distinguishable from Network Automation, where the court pointed out that reasonable, prudent and experienced internet consumers "fully expect to find some sites that aren't what they imagine based on a glance at the domain name or search engine summary." Id. At 1153.

likelihood of confusion.

All eight (8) factors considered together however, indicated that there is a high likelihood of confusion. The facts show: (1) that MOM has a protectable ownership interest in the Shaq and Shaq formative marks; and (2) that the Defendants' use of Shaqtus mark is likely to cause consumer confusion. Accordingly, there are no genuine issues of material fact and MOM is entitled to judgment as a matter of law on its trademark infringement claims.

### B. Unfair Competition - Claims (ii) and (v)

The test for unfair competition under both common-law and the Lanham Act is identical to the test used for trademark infringement. See Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1178 (9th Cir. 1988); see also M2 Software, Inc. v. Madacy Entertainment, 421 F.3d 1073, 1080 n.5 (9th Cir. 2005) ("The test for . . . common-law and statutory unfair competition claims, is whether there was a 'likelihood of confusion.'"). Accordingly, because MOM is entitled to summary judgment on its trademark infringment claim, it is also entitled to summary judgment on its unfair competition claims.

### C. Violation of Right of Publicity - Claim (vi)

Under Nevada law, there is a right of publicity in the name, voice, signature, photograph, and likeness of every person. N.R.S. § 597.790.1. However, the Ninth Circuit has recognized the transformative use defense when cartoons depicting real persons are "distorted for purposes of lampoon, parody, or caricature." Hilton v. Hallmark Cards, 580 F.3d 874, 890 (9th Cir. 2009). In Hilton, the court gave an example from a California Supreme Court case in which "'half-human and half worm' characters . . were sufficiently transformative to defeat a right of publicity action brought by the entirely human persons on which they were based." Hilton, 580 F.3d at 890, citing Winter v. DC Comics, 69 P.3d 473, 479 (Cal. 2003).

Here, the Shaqtus Character is half-human and half cactus. Therefore, like the half-worm in Winter, the Shaqtus Character is sufficiently transformative to defeat a right to publicity action. See Winter, 69 P.3d at 479. Further, Shaqtus is not O'Neal's real name, voice or signature and thus is not

protected by N.R.S. § 597.790.1.  Accordingly, MOM is not entitled to summary judgment on its right of publicity claim and summary judgment against MOM on this claim is granted.

**D. Counterclaims**

        1.  Trademark Infringement and Unfair Competition

In trademark cases in which the parties have asserted trademark claims against each other based on rights in the same or similar marks, only one party can succeed on its trademark claim.  See, e.g., Oskiera v. Chrysler Motors Corp., 943 F.2d 52 (6th Cir. 1991) (plaintiff's success on claim for trademark infringement barred defendant's counterclaim for trademark infringement); Lane Capitol Management, Inc. v. Lane Capital Management, 15 F.Supp 2d 389, 401 (S.D.N.Y. 1998) (same). Further, in order to succeed on a trademark claim, a party must prove valid protectable rights in the mark at issue.  See Brookfield, 174 F.3d at 1046. Therefore, if a party has already shown that use of the mark violates its rights, then the counterclaiming party does not have rights in the mark.  See, e.g., Oskiera, 943 F.2d at *4.

      Here, Calmese's use of the Shaqtus name violated MOM's rights and he therefore has no rights in the Shaqtus name.  As a result, he cannot prevail on his trademark infringement or unfair competition claims.  Accordingly, MOM is entitled to summary judgment in its favor on these counterclaims.

        2.  Defamation.

      Under Nevada law, in order to establish defamation, a party must prove: (1) there was a false and defamatory statement; (2) there was an unprivileged publication to a third person; (3) fault amounting to negligence; and (4) actual or presumed damages.  Chowdhry v. NLVH, 109 Nev. 478 (1993).

      Calmese's alleges that MOM defamed him in that it "willfully and maliciously filed its January 12, 2010 Complaint and falsely stating that Calmese's business practices and business name are 'fictitious' and 'invalid' and that, 'Calmese and True Logo Fan are alter egos of each other." (#6). In the Complaint (#1), MOM alleged, inpertinent part, as follows:

>Upon information and belief, Defendant True Fan Logo, Inc. ("True Fan Logo") is a fictitious business name used by Calmese. Upon information and belief, True Fan Logo was incorporated in the State of Arizona but has been dissolved, and, therefore, is no longer a valid and existing corporate entity. If True Fan Logo is a valid and existing corporate entity, upon information and belief, Calmese and True Fan Logo are alter egos of each other and, therefore, are directly liable for the infringement of the other.

According to the Arizona Secretary of State records, True Fan Logo, Inc., (referred to in the Complaint as "True Fan Logo, Inc.") was dissolved in October, 2002. Since the entity is dissolved but Calmese is still conducting business under that name, it is accurate to say that Calmese is using the name as a fictitious business name and the entity is no longer a valid or existing corporate entity. Therefore, MOM's allegations are correct. Calmese's contention that because he holds a valid trademark to the "True Fan Logo, Inc.," name it is a valid business entity is inaccurate. A trademark is not a corporate entity. Further, Calmese has not offered any evidence of the requisite fault or his alleged damages. Therefore, Calmese cannot prevail on his defamation claim. Accordingly, MOM is entitled to summary judgment in its favor on this counterclaim as well.

## IV.  Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Strike (#59) is **DENIED;**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (#50) **GRANTED in part and DENIED in part**;

**IT IS FURTHER ORDERED** that the entirety of Plaintiff's Motion for Partial Summary Judgment with the exception of the Violation of Right to Publicity Claim (#50) is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment for the Violation of Right to Publicity Claim (#50) is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's Cross Motion for Summary Judgment (#58) is **DENIED in part and GRANTED in part**;

**IT IS FURTHER ORDERED** that the entirety of Defendant's Cross Motion for Summary Judgment with the exception of Plaintiff's Violation of Right to Publicity Claim (#58) is **DENIED;**

Finally, **IT IS ORDERED** that Defendants' Cross Motion for Summary Judgment for the Violation of Right to Publicity Claim (#58) **GRANTED**.

**DATED** this 11th day of July 2011.

_____
Kent J. Dawson
United States District Judge